Bellows v. Todd.

## BELLOWS v. TODD.

1. Evidence: COPIES OF LETTERS. Copies of letters belonging to and on file in the office of the register of the State land office, duly certified under the hand and seal of the register, are admissible in evidence, and entitled to the same credibility as the original letter themselves, under section 4047 of the Revision.

2. —— That such letters are on file in the proper office is sufficient evidence that they were sent there by the writer in accordance with the direction.

3. Public lands: GRANTS: EFFECT OF CERTIFICATION. Where public lands are certified to a State, by the secretary of the interior, under an act of congress, such certification amounts to a reservation of the lands from entry or sale, and an individual cannot thereafter enter any portion of the same under the pre-emption or homestead acts. An expresss reservation is not necessary.

4. —— DES MOINES RIVER LANDS: ERRONEOUS RESERVATION. The reservation from entry and sale by the secretary of the interior, of the lands granted to the State for the improvement of the navigation of the Des Moines river, under act of August 8, 1846, although erroneous in holding that the grant extended to lands lying above the Raccoon Fork to the northern boundary of the State, was, nevertheless, a reservation of such lands "by competent authority," within the meaning of the act of congress of May 15, 1856.

5. —— POWER OF COMMISSIONER TO CANCEL ENTRIES. The commissioner of the general land office has authority to direct the cancellation of sales and entries of public lands, which he finds to have been improperly made, and evidence of such direction and of the cancellation following it is admissible in an action of right.

*Appeal from Humboldt District Court.*

THURSDAY, MARCH 28.

THE plaintiff, in his petition, alleges that he is the owner in fee simple of certain lands described, and entitled to the immediate possession thereof, and that defendant wrongfully and unlawfully holds possession of the same. Judgment for the possession and damages is demanded.

The answer contains a general denial of all the allegations of the petition, a specific denial of plaintiff's title, and sets up a claim of title in the defendant, and also that he settled upon the premises under the pre-emption laws of the United States, in the year 1860, and that he has ever since occupied the same under a claim of title thereto adverse to the claim of the plaintiff.

The cause was tried to a jury May 31, 1870. Verdict and judgment for defendant. Plaintiff appeals.

*Withrow & Wright,* with *Theodore Hawley,* for the appellant.

*Galusha Parsons* for the appellee.

MILLER, J. — I. The plaintiff gave in evidence to the jury:

1. A certified copy of the articles of incorporation of the Des Moines Navigation and Railroad Company.

2. A contract between the State of Iowa and said company, in which said company undertook to make and finish the improvement of the Des Moines river, and the State agreed, on its part, to sell and convey to the company all the lands donated by act of congress, of August 8, 1846, to the State of Iowa, for the improvement of the Des Moines river, and remaining unsold at a date specified.

3. A joint resolution of the general assembly of the

State of Iowa, approved March 22, 1858, containing propositions for settlement with the Des Moines Navigation and Railroad Company.

4. Preamble and resolution of said company adopted April 15, 1858, accepting and ratifying "the propositions and conditions of the above recited joint resolution" of the general assembly.

5. A duly certified list of the "lands in odd-numbered sections above the Raccoon Fork, and within five miles of the Des Moines river, so far as surveys had progressed, falling to the State of Iowa, under the act of congress of 8th of August, 1846, as construed by the secretary of the treasury in his letter of March 2, 1849, which list embraced the lands in controversy, and approved by the secretary of the interior, December 17, 1849.

6. A deed made by the governor of the State of Iowa conveying the lands in controversy, in fee simple under the contract between the State and the Navigation and Railroad Company, and in pursuance of the joint resolution of the general assembly above recited, to the Des Moines Navigation and Railroad Company.

7. The deed of the company made on the 9th day of March, 1861, conveying portions of the land in controversy to Robert I. Hubbard. The deed is in the usual form without warranty.

8. The deed of the company made December 14, 1868, for the other portions of the land in controversy, with covenants of warranty, to Electus B. Litchfield.

9. Deed of Robert I. Hubbard to Grace H. Litchfield, wife of Edwin C. Litchfield, executed March 24, 1861, for part of the land in controversy, with special warranty.

10. Deed of Edwin C. Litchfield and Grace H. Litchfield, for the same land, conveying the same to the plaintiff, with covenants of warranty.

11. Deed of Electus B. Litchfield and wife to plaintiff, duly executed February 11, 1870, conveying the other

Bellows v. Todd.

portions of the land in controversy to plaintiff, with covenants of warranty, being the same lands conveyed to said Litchfield by the company.

12. A copy of the articles of the Des Moines Navigation and Railroad Company, duly certified by the secretary of the State of Iowa, to be "a true copy of the original articles of incorporation, as the same appears on file" in his office.

The defendant was permitted to prove, by his own evidence, as follows:

1. That he moved upon the land in controversy in April, 1860.

2. That he took possession of the land as a pre-emptor, and occupied it as such until after the passage of the homestead law.

3. That after the passage of that law he surrendered to the proper land officer his pre-emption certificate, and entered it as a homestead, receiving the proper certificate from the receiver of the land office, dated March 14, 1863.

4. That he cultivated the land under this entry, ploughed over fifty acres, and erected thereon a frame dwelling-house, with cellar and meat house.

5. That plaintiff had knowledge of all these facts.

6. Certified copy of the original entry, showing that the pre-emption entry was made on the 23d day of April, 1860.

7. Certificate of homestead entry, bearing date March 14, 1863.

The above was all the evidence received.

II. In the progress of the trial, plaintiff's counsel offered in evidence a certified copy of a letter of Richard M. Young, commissioner of the general land office, to Charles Corkey, secretary of the board of public works at Iowa city, in the words and figures following:

1. EVIDENCE: copies of letters.

"General Land Office,
"*February* 23, 1848.

"Sir: — Your communication of the 29th of November last, inclosing a copy of yours of the 22d of September last, has been received, and would have received an earlier response but for the erroneous and defective surveys along the Des Moines river, which prevented this office from submitting to the secretary of the treasury the selections made by the State of Iowa for the improvement of the navigation of that river, under the act of the 8th of August, 1846. As these surveys have been corrected, action will be had on these selections as soon as possible, and when approved they will be certified to you.

"It is not usual to furnish more than a diagram of the grant in a case of this kind, with a certified list of the tracts granted as above mentioned; and these will, of course, be transmitted as they can be prepared.

"All the aid that this office can give the board of public works, in the discharge of its duties, will be cheerfully rendered, and if it is possible to procure copies of the reports of the topographical bureau of the examination heretofore made of the Des Moines river, it will afford me pleasure to do so, and forward them to you.

"A question has arisen as to the extent of the grant made to Iowa by the act of 8th of August, 1846, and the opinion of this office has been requested on that point.

"By the terms of the law, the grant is of an equal moiety in alternate sections of the public lands remaining unsold, and not otherwise disposed of, incumbered or appropriated, in a strip of five miles in width on each side of the river, to be selected within said territory, etc., etc., and the proceeds are to be applied in the improvement of the navigation of that river, from its mouth to the Raccoon Forks. Hence the State is entitled to the alternate sections within five miles of the Des Moines river, throughout

the whole extent of that river within the limits of Iowa.

"Very respectfully, your obedient servant,

"RICHARD M. YOUNG,

"*Commissioner.*

"CHARLES CORKEY, Esq."

To which defendant objected on the grounds:

1. The letter is not evidence.
2. It is only a copy, and that is not evidence.
3. There is no proof that the letter was ever sent, but that it yet remains on file in Washington.

The court sustained defendant's objections, and excluded the evidence offered, to which ruling the plaintiff at the time excepted.

Also a certified copy of a letter of Richard M. Young, commissioner, etc., in the words and figures following:

"GENERAL LAND OFFICE, *June* 1, 1849.

"REGISTER AND RECEIVER, *Iowa City, Iowa.*

"GENTLEMEN:—The secretary of the treasury having decided that the grant to the State of Iowa, under the act of the 8th of August, 1846, extended along the Des Moines river to its source, and that it did not stop at the Raccoon Forks, as this office had previously decided, you are hereby directed to withhold from sale all the lands situated in the odd-numbered sections within five miles of each side of that river above the Raccoon Forks.

Inclosed I send you a diagram, upon which the State selections above that point are colored yellow. I have also to request that you will make out a list showing the sales and locations which have been made within these sections, as it is designed to endeavor to procure some legislative action on the part of congress confirmatory of them.

" The diagram inclosed extends to 83 N., 26 W., being as far as the surveys have progressed in that direction.

" I am, very respectfully, your obedient servant,

" RICHARD M. YOUNG."

The defendant objected to the same on the ground last above stated, and for the further reason that it is directed to a party who had nothing to do with the lands; which objections the court sustained, and excluded the evidence, to which ruling the plaintiff at the time excepted.

Also, a certified copy of the letter of John Wilson, commissioner of the general land office of the United States, to the register of the United States land office at Des Moines, Iowa, dated January 7, 1854, which letter and the certificate appended thereto is in the words and figures following, to wit:

" GENERAL LAND OFFICE, }
　　　January 7, 1854. }

" SIR:—I inclose you copy of a list of the vacant lands in the odd-numbered sections above the Raccoon Forks, and within five miles of the Des Moines river, so far as the surveys have progressed, falling to the State of Iowa, under the act of 8th of August, 1846, as construed by the secretary of the treasury in his letter of 2d of March, 1849, and of the secretary of the interior of the 29th October, 1851, approved by the secretary of the interior on the 17th ultimo.

The quantity embraced by the list is 3,314,243 acres. You will please have them entered upon your tract and plat books. I also inclose a copy of a list of lands falling within the Des Moines river grant, under act of 8th August, 1846, selected by the State under the 8th section of the act of 4th September, 1841, on the 20th July, 1850, and erroneously approved on the 20th February, 1851, previous to the adjustment of the grant for those town

ships, and before it was known that they belonged to the State under the Des Moines river grant.

This list was approved on the 30th ult., and embraced 12,813.51 acres. You will please note these selections upon your plat and tract books, as approved under the act of 8th August, 1846, and cancel the approval of the same as selections under the act of 4th September, 1841.

"I am, very respectfully, your obedient servant,

"JOHN WILSON,

"*Commissioner.*

"*Register of the Land Office,*
    "*Fort Des Moines, Iowa.*"

To which the defendant objected on the following grounds:

1. That it does not appear to relate to the lands in controversy, and for the same reasons as above.

Which objection was sustained by the court and the evidence excluded, to which ruling the plaintiff at the time excepted.

Also, a certified copy of the letter of John Wilson, commissioner of the general land office of the United States, to George Gillaspy, register of the State land office of Iowa, dated January 6, 1854, which letter is in the words and figures following, to wit:

"GENERAL LAND OFFICE,
        *January* 6, 1854.

"SIR:—Herewith I inclose a certified copy of a list of tracts falling to the State of Iowa, under the act of the 8th August, 1846, above the Raccoon Forks, so called, so far as the surveys have progressed, and not heretofore approved by the secretary of the interior, on the 17th ultimo, amounting in the aggregate to thirty-three thou-

sand one hundred and forty-two acres, and forty-three hundredths of an acre (33,142 43-100).

    " I am, very respectfully, your obedient servant,

                                    " JOHN WILSON,

                                        " *Commissioner.*

" GEO. GILLASPY, Esq.,

    " *Register of State Land Office,*

        " *Ottumwa, Iowa.*

To which defendant objected for the same reasons as urged against the last letter, the objection sustained, and the evidence excluded, to which ruling the plaintiff excepted.

III. These several letters were authenticated under the hand and seal of the register of the State land office as true copies of the originals on file in his office, and no objection is made to the authentication of any of them.

It is objected : 1. That the orignal letters were not evidence ; we think otherwise. Their tendency is to show that the land in controversy had been reserved from sale and entry, and to show the kind and form of the evidence usually furnished by the department at Washington under grants of land by congress. The original papers, being material and pertinent to the issue, would have been admissible. So, under section 4047 of 'the Revision, duly certified copies of these papers are evidence in all cases of equal credibility with the original papers on file in the proper office.

It is again objected that there was no proof that these letters had been sent. This objection is inconsistent with the custody of the letters. If they had never been sent they would not have been found in the office where they are certified to be on file. That they are thus found where they should be, if sent, is at least *prima facie* evidence that they were sent as directed.

IV. It is also objected that the letter of the commissioner of June 1, 1849, to the register and receiver of

the land office at Iowa City, was inadmissible, for the further reason that it was addressed to parties who had nothing to do with the lands.

By act of congress, entitled "An act to establish an additional land office in the State of Iowa," approved August 8, 1846, an office was established at Iowa City, and all that portion of the grant which was then surveyed was embraced within the district for which the office was established at Iowa City. See 9 Stat. at Large, p. 82. This letter then was addressed to the proper officers to notify them to "withhold from sale all the lands situated in the odd-numbered sections within five miles of each side of the (Des Moines) river above the Raccoon Forks." The objection of defendant should have been overruled.

The above remarks will also apply to the ruling of the court excluding the letters of the commissioner, dated January 6 and 7, 1854, respectively. The lands in controversy were then embraced within the limits of the district, the office of which was then at Des Moines, under an act of congress approved August 2, 1852. 10 Stat. at Large, p. 26.

V. The plaintiff requested the court to instruct the jury as follows:

"1. If the jury find from the evidence that the lands in controversy were certified to the State of Iowa by the secretary of the interior, in December, 1853, effect under the act of August 8, 1846, the defendant could not acquire a pre-emption right to the same under the homestead act."

3. Public Lands: grants: effect of certification.

"2. If the jury find from the evidence that the land in controversy was certified to the State of Iowa in 1853, under the act of August 8, 1846, and that the same has been conveyed by the State of Iowa to the Des Moines Navigation and Railroad Company, and by said company to plaintiff's grantors, and by them to the plaintiff in this action, then the plaintiff is entitled to recover."

"3. If the jury find from the evidence that the lands were certified to the State of Iowa by the secretary of the interior, under the act of August 8, 1846, then that certification was a reservation of the lands contained in such lists, and the same could not be entered under the pre-emption or homestead acts by the defendant."

Which instructions the court refused, and gave the following:

"1. If the jury find from the evidence in this case that the lands in controversy were included in the grant to the State of Iowa, by act of congress of August 8, 1846, or were conveyed to the State of Iowa by joint resolution of congress of March, 1861 ; and, further, that the State of Iowa regularly conveyed said lands to the Des Moines Navigation and Railroad Company; and further, that the company, by taking the necessary steps under the laws of Iowa, became duly incorporated; and also find that said company, by deed regularly executed and delivered, conveyed said lands to plaintiff's grantors; and further find that said grantors, by deeds regularly executed and delivered, conveyed said lands to the plaintiff, and further find that said lands were expressly reserved from entry by pre-emption or sale, you will find for the plaintiff, otherwise you will find for the defendant."

"2. The jury should consider only such evidence as has been introduced in the cause."

To the refusal to give the instructions asked by plaintiff, and to the giving of the first by the court, plaintiff excepted and assigns this ruling as error.

The first and third instructions refused embody the proposition that, if the lands in controversy were included in the *list* of lands certified to the State of Iowa by the secretary of the interior, under the act of congress of August, 1846, that such certification was a reservation of the lands from sale or entry, and that defendant could not

therefore enter the same under the pre-emption or homestead acts.

By refusing to give the instructions asked, and by giving the first paragraph of the charge, the court not only denied this proposition, but ruled that, to entitle the plaintiff to recover, he must show that the lands were " expressly reserved from entry," and that they were "included in the grant" of August 8, 1846.

In this there was error. That the certification of the lands, and notice to the proper local land offices by the secretary of the interior, operated as a reservation of such lands is held by the supreme court of United States in *Wolcott* v. *Des Moines Navigation and Railroad Co.*, 5 Wall. 684.

It is there said by NELSON, J.; that these lands " were reserved from sale for the special purpose of aiding in the improvement of the Des Moines river : 1. By the secretary of the treasury, when the land department was under his control, and again by the secretary of the interior, after the establishment of this department, to which the duties were assigned." And the opinion is expressed that such reservation by these officers respectively was the exercise of competent power.

It is manifest, if the lands were thus reserved from entry under the pre-emption and homestead acts, the defendant could acquire no title by such entry after the lands were thus reserved.

These instructions should, therefore, have been given as requested.

VI. So, also, the second instruction ought to have been given. It is held in *Wolcott* v. *Des Moines Navigation and Railroad Co.*, *supra*, that, notwithstanding the decision in *Dubuque & P. R. R. Co.* v. *Litchfield*, 23 How. 66, to the effect that the original grant of August 8, 1846, was limited to Raccoon Forks, and did not extend above it, yet that the

4. DES MOINES RIVER LANDS: erroneous reservation.

proviso in the act of ' congress, of May 15, 1856 (11 Stats. at Large, 9), making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in said State, which proviso is: " That any and all lands heretofore reserved to the United States, by any act of congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or any other object what- soever, be and the same are hereby reserved to the United States from the operation of this act," operated, in con- nection with certain subsequent legislation, to reserve for the purpose of aiding the improvement in the navigation of the Des Moines river an equal moiety, in alternate sections of the public lands, on and within five miles of said river, from the " Raccoon Forks," so called, to the northern boundary of the State. That case decides that this proviso reserved from the operation of the act all lands heretofore reserved by competent authority, and that the acts of the secretary of the treasury and secretary of the interior, in withdrawing these lands from sale and entry, under the opinion that the original grant extended above the Raccoon Forks of the river, although such opin- ion was erroneous, operated as a reservation of the lands thus by them withheld from entry and sale. See, also, *The Railroad Company* v. *Fremont County*, 9 Wall. 89; *Same* v. *Smith*, id. 95.

So that, if these lands were withdrawn from sale by the secretary of the interior, as the instruction specifies, under the act of August 8, 1846, they were thereby reserved by *competent authority*, and the title passed to the State under this proviso, in the act of May 15, 1856, for the purpose of aiding the improvement of the Des Moines river; and, if the plaintiff held the same by the conveyances enumerated in the instruction, he would be entitled to recover. The instruction, therefore, should have been given; and the court also erred in giving the

first paragraph of the charge, in which the jury was substantially directed to find for the defendant, unless they found, from the evidence, that the land in controversy was included in the original grant of August 8, 1846.

VII. After defendant had closed his evidence the plaintiff offered, in rebutting, a writing from the department of the interior, signed by the commissioner of the general land office, directed to the register and receiver of the local land office at Fort Dodge, dated January 16, 1869, showing a cancellation of the defendant's homestead entry, which was objected to by defendant and the objection sustained by the court. This ruling is assigned as error.

5. —— power of commissioner to cancel entries.

This ruling was evidently erroneous; that the evidence offered was material requires no argument to show; that it is competent for the officers of the land department of the government to cancel sales and entries of lands which they may find improperly made has frequently been decided by the supreme court of the United States.

The above remarks will also apply to the ruling of the court excluding a certified abstract from the book of homestead entries kept in the United States land office at Fort Dodge, by which the defendant's homestead entry is shown to be canceled January 16, 1869.

For the errors above pointed out, the judgment is

Reversed.